Rahm v. Deig.

| | |
|---|---|
| 121 | 283 |
| 123 | 507 |
| 121 | 283 |
| 125 | 385 |

No. 13,966.

## RAHM v. DEIG.

CONTRACT.—*Breach of.*—*Sale of Merchantable Article.*—*Recovery of Prospective Profits.*—*Counter-Claim.*—In a suit to recover upon a written contract for the sale and delivery of a merchantable article, alleging a compliance with the terms of the contract on plaintiff's part, and the failure and refusal of the defendant to accept and receive the article, the latter can not, by an answer by way of counter-claim, in which he alleges willingness and readiness on his part to receive the article as stipulated, and the failure of the plaintiff to deliver it in accordance with the contract, recover profits which he alleges he would have realized by a resale of the article long after the purchase from the plaintiff, and which could not have been known to the parties at the time of the making of the contract.

SAME.—*Measure of Damages.*—Where a person sells a merchantable article to another, who is engaged in trade, and shipping and selling such articles in another market, and a sale is made without reference to the fulfilment of any particular contract of resale by the purchaser, but with the general knowledge that the purchaser is purchasing with a view of reselling in the future in the course of trade, the measure of damages in case of a failure to deliver is the difference between the contract price to be paid and the value in the market at the time and place of delivery, unless it appears that such article or articles can not be had in such market.

SAME.—*Evidence.—Conversation with Agent.—Admissibility of.*—In a suit for breach of contract, based upon the alleged refusal of the defendant to accept and receive the article purchased by him of the plaintiff, conversations between the plaintiff and an agent of the defendant while the article—in this instance corn—was being weighed before delivery, in which the quality of the corn was spoken of, and the question of its acceptance by the defendant discussed, are competent in evidence.

PLEADING.—*Must Proceed on Definite Theory.*—If a pleading is not good on the theory on which it is pleaded, it is not error to sustain a demurrer to it.

PRACTICE.—*Open and Close of Argument.*—Where an answer does not make such an admission of the facts alleged in the complaint as that the plaintiff would not be required to introduce any evidence in the first instance to entitle him to judgment, it is not error for the court to refuse to permit the defendant to open and close the argument.

From the Vanderburgh Ciruit Court.

*D. B. Kumler* and *G. F. Denby*, for appellant.

*A. P. Hovey* and *G. V. Menzies*, for appellee.

OLDS, J.—This is an action by the appellee against the appellant on a written contract, which is as follows :

"EVANSVILLE, Ind., August 25th, 1886.

" I have this day sold William Rahm, Jr., my crop of corn, estimated at •thirty-eight hundred and fifty (3,850) bushels (or 1,500 sacks), which I am to shell, fan, sack, and deliver on the Mount Vernon wharf-boat free of storage and charges to steamboats, on or before the fourth day of September next ; all' to be good, sound, merchantable white corn, and put up and delivered, as stated above, in good order and condition. And I further agree to properly dunnage the corn, and protect the same from exposure to stock. Said William Rahm, Jr., to furnish bags and twine to hold said corn. Said William Rahm, Jr., is to pay me forty (40) cents per bushel for said corn as soon as delivered in accordance with this contract ; this price to include all commissions, etc. Received on the above contract —— dollars.

"(Signed).            JOHN B. DEIG."

The complaint declares upon the contract, and alleges a failure and refusal of the defendant to accept and receive the

corn. The defendant answered, admitting the purchase of the corn, but avers a compliance on the part of the defendant, and a willingness to accept the corn, and a failure of the plaintiff to deliver good, sound, merchantable white corn, *and that plaintiff undertook to deliver to defendant corn, a large portion of which was unsound, and differing from that called for by the contract. This paragraph argumentatively denies the averments of the complaint as to a compliance with the contract on the part of the plaintiff.

The defendant also filed a paragraph of counter-claim, based upon the contract, and setting out a copy of it, and averring a compliance with it on his part; alleging, further, that he purchased the corn for resale, which plaintiff well knew; that after the execution of the contract the defendant resold the corn to persons in Nashville, Tenn., which plaintiff well knew, at forty-one cents per bushel; that plaintiff failed to deliver the corn, whereby defendant was unable to comply with his contract with the persons to whom he had resold it, and that by reason of such failure on the part of the plaintiff he had suffered damage to the extent of the profit he would have realized by the resale of the corn had it been delivered as per contract.

A demurrer was filed to this paragraph of counter-claim, and sustained, and the ruling is assigned as error. It is contended that the paragraph is good, on the theory that it alleges a breach of the contract, and the defendant is entitled to damages in the amount of the profit he would have made by his contract of resale, and if it is not good upon that theory that in any event it states facts sufficient to entitle him to general damages.

By this paragraph it is clear that the defendant sought to plead and recover the profit which he would have realized by the resale of the corn under the contract which he had made for the resale of the same.

It is well settled by the decisions of this court that if a pleading is not good on the theory on which it is pleaded

it is not error to sustain a demurrer to it. *Louisville, etc., R. W. Co.* v. *Thompson*, 107 Ind. 442; *Henry* v. *Stevens*, 108 Ind. 281; *First Nat'l Bank, etc.*, v. *Root*, 107 Ind. 224; *Western, etc., Co.* v. *Young*, 93 Ind. 118; *Mescall* v. *Tully*, 91 Ind. 96.

The general rule is, that a party who fails to deliver goods according to the terms of his contract, is liable for the value of the goods so to be delivered in the open market at the time of the failure, and the measure of damages for the breach of a contract to sell and deliver goods is the difference between the contract price and the market value of the goods at the time and place fixed by the contract for the delivery. *Vickery* v. *McCormick*, 117 Ind. 594; *City of Terre Haute* v. *Hudnut*, 112 Ind. 542.

In 1 Sutherland Damages, p. 160, speaking of the measure of damages, it is said: "For breach of other contracts, than to pay money, the injured party is entitled to compensation for gains prevented and losses sustained. The gains prevented are those which would accrue to the contracting parties from the mutual performance of the contract;" and further it is said: "By this general rule, the party thus injured by a total breach, is entitled to recover the profits of the particular contract, which he shows, with sufficient certainty, would have accrued, if the other party had performed. He is entitled to recover proportionately for a partial breach. And to ascertain these profits, the nature and the special purpose of the contract, a sub-contract, or other subsidiary and dependent arrangement, within the contemplation of the parties at the time of contracting, may be taken into consideration."

The case of *Wetmore* v. *Pattison*, 45 Mich. 439, was a suit upon a contract by which Pattison had contracted to deliver certain saw-logs to Wetmore and others, the plaintiffs. After the making of the contract the plaintiffs entered into a contract with a car company to furnish the company the lumber to be cut out of the logs. Pattison failed to de-

liver the logs, and as a consequence the plaintiffs failed in their contract to deliver the lumber, and it was insisted that the plaintiffs were entitled to recover for the loss sustained by reason of their failure to deliver the lumber, and the court says: "This is not a correct view. The logs were not contracted for on the strength of the lumber agreement. The latter had no existence when the former was entered into. The plaintiffs after having made their contract with the defendant were at liberty, no doubt, to embark in such enterprise as they thought proper on the strength of it. It was a question of business prudence how far it would be wise or safe to rely on the agreement with defendant. But they were not empowered to enter into such scheme or arrangement as they might choose, in reliance on his contract, and make him responsible in the event of his failure for whatever losses might happen through such secondary operations. To hold otherwise would be to visit the failure of performance with an amount of liability not dependent on the contract, but on the conjectural possibilities of any scheme built upon the contract by the party to whom performance is due. The damages for which one may be held liable in a contract of this nature, are such as flow directly from his own default, and which it is reasonable to suppose were within the contemplation of the parties on their entering into the contract."

In the case of *Carpenter* v. *First Nat'l Bank, etc.*, 119 Ill. 352, the question involved was as to the measure of damage to be recovered for the failure to fulfil a contract for the sale and delivery of grain, and on the question of the measure of damages the court says: "The general rule is, that the purchaser is entitled to recover the difference between the contract price and the value of the article in the market at the time and place of delivery. (*Messmore* v. *Lead Co.*, 40 N. Y. 427.) 'This rule, however, is changed, where the vendor knows, that the purchaser has an existing contract for a resale at an advanced price, and that the purchase is made to fulfil such contract, and the vendor agrees to supply the ar-

Rahm v. Deig.

ticle to enable him to fulfil the same, because those profits, which would accrue to the purchaser upon fulfilling the contract of resale, may justly be said to have entered into the contemplation of the parties in making the contract.' " See, also, *Cockburn* v. *Ashland Lumber Co.*, 54 Wis. 619.

The rule is that the defaulting party is liable for such damages as it is reasonable to suppose were within the contemplation of the parties at the time of entering into the contract; and when the sale is of a merchantable commodity, in the absence of any facts or circumstances to change the rule the measure of the damages for a failure to deliver is the difference between the contract price to be paid and the value of the article in the market at the time and place of delivery. This rule is subject to exceptions. If at the time of entering into the contract the purchaser has a contract with another person for the sale and delivery of such commodity or thing purchased, and the purchase is made to fulfil such contract, and the vendor agrees to supply such article to enable the purchaser to fulfil his contract, and the vendor fails to deliver in accordance with the contract, in such case, the measure of damages is the profits which would have accrued to the purchaser if the vendor had performed his contract. And in case the article purchased is not to be had in the market at the time and place of delivery, by reason of which the purchaser is unable to obtain the article contracted for in the market at the time and place of delivery, a different rule applies. But when a person sells a merchantable article to another, who is engaged in trade and shipping and selling such articles in another market, and a sale is made without reference to the fulfilment of any particular contract of resale by the purchaser, but with the general knowledge that the purchaser is purchasing with a view of reselling in the future in the course of trade, the measure of damages in case of a failure to deliver is the difference between the contract price to be paid and the value in the

Rahm *v.* Deig.

market at the time and place of delivery, unless it appears that such article or articles can not be had in such market.

By the counter-claim in this case profits are sought to be recovered which the purchaser would have realized by reason of a resale of the corn long after the purchase of the plaintiff, and which could not have been known to the parties at the time of the making of the contract. It is alleged that the purchase was made with a view of reselling, which the seller well knew, but this is not sufficient to change the rule as to the measure of damages. It does not allege to whom he intended to resell, or in what market, or for what price. If in the market where the corn was to be delivered, and it does not appear that the seller had any knowledge of another, then the parties must have contemplated a resale at the market price, and the measure of damages in that event would be the same. Nor does it appear by the counter-claim that the purchaser might not have purchased in the market where the corn was to be delivered at the time of the failure to deliver, other corn to have fulfilled his contract with the person to whom he had made the resale. There is nothing peculiar about the article contracted for; the contract provided that it should all be good, sound merchantable white corn.

The paragraph of counter-claim was insufficient, on the theory on which it was pleaded, and there was no errror in sustaining a demurrer to the same.

It is also contended that the court erred in refusing to allow the appellant to open and close the case. There was no error in this ruling of the court. The answer does not make such an admission of the facts alleged in the complaint as that the plaintiff would not be required to introduce any evidence, in the first instance, to entitle him to judgment; but, on the contrary, the pleading is in the nature of an argumentative denial of the facts alleged in the complaint, constituting the breach of the contract.

The third and fourth reasons for a new trial are on the

grounds that the court erred in the admission of certain testimony. While the plaintiff, Deig, was testifying as a witness, he was asked the following questions :

" What did you say to David while he was weighing the corn, and what did he say to you ? " To which question the defendant objected, for the reason " that the statements of David were immaterial and irrelevant ; that he had no right to vary the terms of the written contract, and that no waiver was pleaded by the plaintiff."

The court overruled the objection, and the witness answered as follows : " I said to David and he said to me, there has been a good deal of trouble over corn sold to Rahm in Posey county ; that several lots have been rejected, and I said I do not want any trouble. I want it settled now whether this corn I have sold is good corn, and will be accepted, and David said the corn was all right, and told me to haul it to the wharf-boat at Mt. Vernon."

The witness was then asked the further question : " What did David say while he was weighing the corn about its quality, and whether or not it would be accepted ? " To which question the defendant addressed the same objection as to the former one, which was overruled, and the witness answered as follows :

" I told David while he was weighing the corn that my corn was worth more to me on the farm than it would be worth on the wharf-boat at Mt. Vernon if Mr. Rahm would not accept it ; that I did not want to pay wharfage and expense of hauling, and if the corn would not be accepted I wanted to know it now, and David said, 'You go ahead, and haul the corn to Mt. Vernon ; it will be all right, and will be accepted ;' on the strength of this statement I hauled the corn to Mt. Vernon ; David accepted it."

There was evidence tending to prove that Thomas David, the person mentioned by the appellee in his testimony, and to whom the question related, was the agent of the appellant in weighing and receiving the corn for him, and that when

the appellee had the corn ready for delivery, David, acting for appellant, weighed it, and after the corn was weighed the appellee delivered it on board a boat, and then the appellant, the defendant in person, refused to accept and pay for the corn.

In view of this state of facts the conversation between David, the agent of the defendant, and the plaintiff while weighing the corn before delivery was proper, as showing the relation of the parties, and under what circumstances the corn was delivered, and if the agent had authority to pass upon the quality of the corn and accept it, and he did so, it would bind the defendant; but if afterwards the defendant, in person, refused to accept and pay for the corn, and the plaintiff retained the corn and sued for the damage sustained, it would not only be proper to prove that the corn was in fact good merchantable corn, such as called for by the contract, but to show that the plaintiff, acting in good faith, exhibited it to the authorized agent of the defendant, and to prove what was said at the time between him and the agent of the defendant in regard to the quality of the corn and the delivery of it. There was no error in the admission of the testimony.

Some objections are urged to the instructions given by the court. We have examined the instructions and do not deem it necessary to set them out in the opinion. The one specifically pointed out as objectionable, relating to inspection of the corn by the agent David, is in harmony with our views stated in passing upon the admissibility of the testimony objected to, and we think there is no error in the instructions given.

There is no error in the record for which the judgment should be reversed.

Judgment affirmed, with costs.

Filed Dec. 14, 1889.