HADLEY DEAN PLATE GLASS CO. v. HIGHLAND GLASS CO.

(Circuit Court of Appeals, Eighth Circuit. January 19, 1906.)

No. 2,210.

1. SALE—CONTRACT TO MANUFACTURE AND DELIVER GOODS—"MORE OR LESS" AS QUALIFYING STATEMENT OF QUANTITY.

Where, in a contract for the manufacture and delivery of goods, the statement of quantity is qualified by the words "more or less," these, unless supplemented by language giving them a broader scope, apply only to such accidental or immaterial variations in quantity as would naturally occur in connection with such a transaction.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, § 191.

Contracts for sales of things to be produced or manufactured, see note to Star Brewery Co. v. Horst, 58 C. C. A. 363.]

2. DAMAGES—CONTRACT—BREACH BY VENDEE—MEASURE OF DAMAGES.

Where a contract for the manufacture and delivery of goods is repudiated by the vendee before the goods are manufactured, the measure of the vendor's damages is the difference between the cost of manufacture and delivery and the contract price.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, § 1106.]

3. MONOPOLIES—COMBINATION IN RESTRAINT OF TRADE—MISSOURI STATUTE IS WITHOUT APPLICATION TO INTERSTATE COMMERCE.

The anti-trust statute of Missouri (Rev. St. Mo. 1899, §§ 8965–8970) can have no application to a contract for the sale of goods to be manufactured by the vendor in another state and delivered to the vendee in Missouri, because such a contract directly relates to Interstate Commerce, the regulation of which is within the exclusive authority of Congress.

4. SAME—SHERMAN ANTI-TRUST ACT—CONTRACT FOR SALE OF GOODS BY MEMBER OF COMBINATION.

The Act of July 2, 1890, c. 647, § 1, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200], known as the "Sherman Anti-Trust Act," does not invalidate, or prevent a recovery for the breach of a collateral contract for the manufacture and sale of goods by a member of a combination formed for the purpose of restraining interstate trade in such goods.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

Charles Cummings Collins (W. F. Carter, William T. Jones, and A. R. Taylor, on the brief), for plaintiff in error.

James C. Jones (Lon O. Hocker, C. P. Ellerbe, C. P. Ellerbe, Jr., and Frank A. Thompson, on the brief), for defendant in error.

Before VAN DEVANTER and HOOK, Circuit Judges, and LOCHREN, District Judge.

VAN DEVANTER, Circuit Judge. The Highland Glass Company, a Pennsylvania corporation, engaged in manufacturing glass in that state, received and accepted the following order for the manufacture and delivery of glass from the Hadley-Dean Glass Company, a Missouri corporation, carrying on the business of a jobber and dealer in glass at St. Louis:

"Book us with 200,000 sq. ft. ⅛ ribbed more ·or less' subject to sizes and delivery as required at price 5c. sq. ft. cut to size St. Louis delivery less 1% cash 10 days acct. St. L. World's Fair bldgs. Acc't Mr. Torrence. Ack."

23,056 square feet of glass was manufactured, delivered, accepted, and paid for under the contract so made. The Hadley-Dean Company then refused to furnish specifications for or to accept the remaining 176,944 feet, although the Highland Company offered and was ready and willing to manufacture and deliver the same as agreed. In an action in the Circuit Court to recover damages from the Hadley-Dean Company for its breach of the contract a verdict was directed in favor of the Highland Company for the difference between the cost of manufacturing and delivering the remaining glass and the contract price, and judgment was rendered on the verdict returned under that direction. The purpose in prosecuting the present writ of error is to secure a reversal of that judgment.

It is assigned as error that the court held that the order was for 200,000 square feet of glass, more or less, the latter words having their usual signification, and rejected the defendant's contention that the order was for such an amount of glass as would be required by the defendant "to fulfill its contracts for glazing the St. Louis World's Fair Buildings." No reference to the existence of any such contracts or to the amount of glass required to fulfill them is made in the pleadings or in the evidence, and it is conceded that the question presented by this assignment is to be determined by an examination of the order alone. We think it was properly interpreted. The quantity of glass is expressed in the words "200,000 sq. ft., ⅛ ribbed more or less." The succeeding phrase "subject to sizes and delivery as required," merely reserved to the defendant the right to thereafter designate the sizes to which the glass should be cut and the times when it should be delivered. The still later phrase "acc't St. L. World's Fair bldgs.," while explaining the use to which the glass was to be applied, is, in point of place and grammatical arrangement, so completely separated from the expression in respect to quantity that it could not well have been intended to qualify that expression. A more reasonable view of its purpose is that it was intended to give some indication of when the glass would be required and to apprise the plaintiff of the necessity for promptly conforming to such directions as should thereafter be given for its manufacture and delivery. It was common knowledge that the time for the completion of the World's Fair buildings was limited and that a failure to complete them within that time would result in serious inconvenience and loss. True the quantity specified is qualified by the words "more or less," but it is well settled that in a contract like this these words, unless supplemented by language giving them a broader scope, apply only to such accidental or immaterial variations in quantity as would naturally occur in connection with such a transaction. Brawley v. United States, 96 U. S. 168, 172, 24 L. Ed. 622; Norrington v. Wright, 115 U. S. 188, 204, 6 Sup. Ct. 12, 29 L. Ed. 366; Pine River Logging Co. v. United States, 186 U. S. 279, 22 Sup. Ct. 920, 46 L. Ed. 1164; Id., 32 C. C. A. 406, 89 Fed. 907. There is no such broadening language in the order.

It is assigned as error that the damages were not measured by the difference between the market value of the glass and the con-

tract price, but the point may be dismissed with the statement that, under the established rule in this jurisdiction, and also in the state of Missouri where the controversy arose, where a contract for the manufacture and delivery of goods is repudiated by the vendee before the goods are manufactured, the measure of the vendor's damages is the difference between the cost of manufacture and delivery and the contract price. Kingman v. Western Mfg. Co., 34 C. C. A. 489, 92 Fed. 486; Philadelphia, etc., Co. v. Howard, 13 How. 307, 344, 14 L. Ed. 157; United States v. Speed, 8 Wall. 77, 84, 19 L. Ed. 449; Hinckley v. Pittsburg Steel Co., 121 U. S. 264, 7 Sup. Ct. 875, 30 L. Ed. 967; Roehm v. Horst, 178 U. S. 1, 21, 20 Sup. Ct. 780, 44 L. Ed. 953; Black River Lumber Co. v. Warner, 93 Mo. 374, 388, 6 S. W. 210; Crescent Mfg. Co. v. Nelson Mfg. Co., 100 Mo. 325, 336, 13 S. W. 503; Chapman v. Kansas City, etc., Ry. Co., 146 Mo. 481, 508, 48 S. W. 646.

There was some evidence tending to show that at the time of making the contract the plaintiff and others, not including the defendant, were in an unlawful combination to stifle competition in the sale of glass and to arbitrarily increase its price, and because of this it is contended that in directing a verdict for the plaintiff the court failed to give effect to the anti-trust statute of Missouri (Rev. St. Mo. 1899, §§ 8965–8970), and to the anti-trust legislation of Congress (Act July 2, 1890, c. 647, § 1, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]; Act August 27, 1894, c. 349, §§ 73–77, 28 Stat. 570 [U. S. Comp. St. 1901, pp. 3202, 3203]).

Of the state statute it is sufficient to say that it can have no application to the contract under consideration without impinging upon the exclusive authority of Congress to regulate commerce among the several states. Railroad Co. v. Husen, 95 U. S. 465, 469, 24 L. Ed. 527; Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681, 34 L. Ed. 128; Schollenberger v. Pennsylvania, 171 U. S. 1, 18 Sup. Ct. 757, 43 L. Ed. 49; Addyston Pipe & Steel Co. v. United States, 175 U. S. 211, 229–233, 20 Sup. Ct. 96, 44 L. Ed. 136; Stockard v. Morgan, 185 U. S. 27, 22 Sup. Ct. 576, 46 L. Ed. 785. The contract was for the sale of glass to be manufactured by the vendor in Pennsylvania and delivered to the vendee in Missouri, and therefore directly related to interstate commerce. Addyston Pipe & Steel Co. v. United States, 175 U. S. 211, 246, 20 Sup. Ct. 96, 44 L. Ed. 136; Bement v. National Harrow Co., 186 U. S. 70, 92, 93, 22 Sup. Ct. 747, 46 L. Ed. 1058; Montague v. Lowry, 193 U. S. 38, 47, 24 Sup. Ct. 307, 48 L. Ed. 608.

The act of Congress of August 27, 1894, is also without application because it is confined to combinations "between two or more persons or corporations either of whom is engaged in importing any article from any foreign country into the United States."

The act of July 2, 1890, is what is popularly known as the "Sherman Anti-Trust Act," and declares illegal "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations." That it does not render illegal or prevent a recovery upon this contract is shown by Connolly v. Union Sewer Pipe Co., 184 U. S. 540,

22 Sup. Ct. 431, 46 L. Ed. 679. In that case the plaintiff sought to recover the purchase price of sewer pipe sold by it to the defendant and the latter sought to defend on the ground that at the time of the sale the plaintiff was in an unlawful combination to restrain interstate trade in sewer pipe. The court, after holding that the principles of the common law did not justify the buyer in refusing to pay for what he had bought and received, on the ground that the seller was in an unlawful combination with others to restrain trade in the article sold, said (pages 549, 550, of 184 U. S., page 435 of 22 Sup. Ct. [46 L. Ed. 679]):

"The special defense based upon the act of Congress of July 2, 1890, c. 647, § 1, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200], was also properly rejected. * * * Much of what has just been said in reference to the first special defense, based on the common law, is applicable to this part of the case. If the contract between the plaintiff corporation and the other named corporations, persons, and companies, or the combination thereby formed, was illegal under the act of Congress, then all those, whether persons, corporations, or associations, directly connected therewith, became subject to the penalties prescribed by Congress. But the act does not declare illegal or void any sale made by such combination, or by its agents, of property it acquired or which came into its possession for the purpose of being sold—such property not being at the time in course of transportation from one state to another or to a foreign country. The buyer could not refuse to comply with his contract of purchase upon the ground that the seller was an illegal combination which might be restrained or suppressed in the mode prescribed by the act of Congress; for Congress did not declare that a combination illegally formed under the act of 1890 should not, in the conduct of its business, become the owner of property which it might sell to whomsoever wished to buy it. So that there is no necessary legal connection here between the sale of pipe to the defendants by the plaintiff corporation and the alleged arrangement made by it with other corporations, companies and firms. The contracts under which the pipe in question was sold were, as already said, collateral to the arrangement for the combination referred to, and this is not an action to enforce the terms of such arrangement. That combination may have been illegal, and yet the sale to the defendants was valid."

The contract for the sale of the glass being valid, it follows as a matter of course that an action lies for its breach.

No error is disclosed by the record, and the judgment is affirmed.