(52 Misc. Rep. 356)

### H. D. TAYLOR CO. v. NIAGARA BEDSTEAD CO.

(Supreme Court, Special Term, Erie County.   December, 1906.)

**1. SALES—CONSTRUCTION OF CONTRACT—QUANTITY.**

Plaintiff was a jobber in steel, and defendant gave him a written order to ship from 100 to 125 tons of soft steel at $1.50 base, half extras f. o. b. mill for deliveries to July 1, 1906. Above the order was written the words "Our requirements approximately." *Held*, under the contract, defendant was bound to take at least 100 tons of steel.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, § 191.]

**2. SAME—REMEDIES OF SELLER—ACTION FOR DAMAGES—GOODS TO BE PRODUCED OR MANUFACTURED.**

Plaintiff was a jobber in steel, and received a written order from defendants to ship from 100 to 125 tons of soft steel at $1.50 base, half extras f. o. b. mill for deliveries to July 1, 1906. Defendant took but 19 tons. Plaintiff, in order to fill orders from its customers, including that received from the defendant, placed with the steel company orders for steel to be delivered, and was able to sell to its other customers all the steel so ordered at as good prices as those agreed to be paid by the defendant. Plaintiff would have been able to secure more steel, had it desired it, at the same price as that paid by it for the steel purchased. *Held*, that the measure of damages was the difference between the contract price of the steel and what it would have cost plaintiff to purchase it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, § 1098.]

**3. SAME.**

Where a vendee of goods to be manufactured repudiates the contract before the goods have been manufactured, the vendor's right to recover damages for the breach is not changed by the fact that he himself is not the manufacturer, and that he intended to procure others to manufacture the goods or go into the market and purchase them.

Appeal from Municipal Court.

Action by the H. D. Taylor Company against the Niagara Bedstead Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Frederick Ullman, for appellant.

Frank C. Ferguson, for respondent.

WHEELER, J. The plaintiff was given judgment in the Trial Court upon a claim for damages alleged to have been sustained by a failure of the defendant to take a certain quantity of iron agreed to be purchased by it from the plaintiff. The plaintiff was a jobber in

iron, and in October, 1905, the defendant gave the plaintiff a written order to ship from "100 to 125 tons soft steel (pounds) at $1.50 base. Half extras F. O. B. mill for deliveries to July 1, 1906. To be shipped by Carnegie Steel Company from their Lower Union Mills at Youngstown, O. Prices guaranteed against any decline." Above the order was written the words, "Our requirements approximately." The defendant ordered only 19 tons before July 1, 1906, and declined to place orders for the balance, claiming that under the contract in question it was not required to take more than it actually required, even though those requirements did not equal 100 tons. The action was brought to recover the loss of profits of $1 per ton, which the plaintiff claimed it sustained by failure of the defendant to take and pay for the minimum quantity of 100 tons.

The plaintiff's contention is right as to the obligation of the defendant to take at least 100 tons of steel. The real question presented on this appeal is the measure of damages to be applied in this case. The contract, by its terms, contemplated that the steel was to be shipped from the Carnegie Mills, at Youngstown, as ordered by the defendant, and that the defendant might place its orders for the hundred tons at any time prior to July 1, 1906. As stated, the plaintiff is a jobber in iron and steel. It took orders from, and made sales to, various customers, and counsel for the plaintiff stipulated that for the purpose of enabling it to fill orders so obtained from its customers, including that received from the defendant, it placed with the Carnegie Company orders for steel to be delivered. The first of these orders was at a price which would have enabled the plaintiff to have made a profit of $2 per ton on the defendant's order, had the defendant placed its orders for the hundred tons within a given time. The second and subsequent order of the plaintiff for steel placed with the Carnegie Company would have given a profit to the plaintiff on the defendant's order of but $1 per ton, and it was at that rate the Trial Court gave judgment in favor of the plaintiff.

It was, however, conceded on the trial by plaintiff's counsel that the plaintiff was enabled to sell to other customers all the steel ordered from the Carnegie Company at as good prices as those agreed to be paid by the defendant, and defendant's counsel, therefore, contends that the plaintiff suffered no damage by reason of the failure of the defendant to take the entire 100 tons agreed to be purchased. The stipulation of facts on part of the plaintiff's counsel is to be read and considered in connection with the further statement made in immediate connection with it, that while all the iron ordered from the Carnegie Company had been actually sold to other customers than the defendant, "which customers we would have had anyhow, we simply would have ordered more iron from the Carnegie Company at a price equal to the price we were to get under this contract." It clearly appears from the stipulated facts that this was not a sale of specific iron, designated and already in existence, but an agreement to purchase iron at a stipulated price, up to 100 tons, which iron the plaintiff might procure either by manufacturing it itself or by purchasing it in the market from other manufacturers. It would also appear that the defendant had the right to designate the sizes

of the bars to be ,delivered, and the price to be paid varied according to the sizes ordered by the defendant, the contract providing for a base price of $1.50 per 100 pounds, and "half extras," which counsel concede to be a trade term, meaning an allowance of half the published variation in rates for varying sizes. It is manifest, therefore, that the contract anticipated the defendant's orders to the plaintiff would call for different sizes, and the order could not be filled or the particular iron manufactured and set apart for delivery until an order specifically giving sizes and quantity had been received. No such orders for 81 tons of this iron were ever given by the defendant.

In cases of this character the rule of damages laid down in the case of Belle of Bourbon Co. v. Leffler, 87 App. Div. 302, 84 N. Y. Supp. 385, applies. It is there decided that where a vendee of goods to be manufactured repudiates the contract before the goods have been manufactured, or is guilty of a breach of contract justifying the vendor in suspending the further manufacture of the goods, the measure of damages is the difference between the cost of manufacture and the contract price. In such a case the market value of the goods is immaterial. The court said:

> "The question hinges upon whether the breach of contract consisted in the failure to accept manufactured goods, or in a repudiation of the contract which relieved the manufacturer from manufacturing and tendering a delivery. When the purchaser of goods to be manufactured repudiates the contract in advance of the manufacture of the goods, or is guilty of conduct which justifies the vendor in suspending further manufacture of the goods and he does so, then the measure of damages is the difference between the cost of manufacture and the contract price"—citing Hinckley v. Pittsburg Bessemer Steel Co., 121 U. S. 264, 7 Sup. Ct. 875, 30 L. Ed. 967; Roehm v. Horst, 178 U. S. 21, 20 Sup. Ct. 780, 44 L. Ed. 953; Todd v. Gamble, 148 N. Y. 382–390, 42 N. E. 982, 52 L. R. A. 225; Kelso v. Marshall, 24 App. Div. 128, 48 N. Y. Supp. 728.

It makes no difference in principle whether the vendor is himself the manufacturer, or procures others to manufacture, or can go into the open market and purchase for delivery the goods he, in turn, has agreed to sell to others. I have studied the stipulations and concessions made by counsel on the trial of this action, and cannot find from those concessions and stipulations that the specific iron contracted for by the defendant was ever manufactured, designated, or in existence. The concessions and stipulations seem only to go to this extent, that the plaintiff had placed with the Carnegie Company a general order for a large quantity of iron, from which it could or might have filled the defendant's order if it had been given, as well as the orders of other customers, and that the plaintiff in the course of its business had been able to obtain from its other customers orders sufficient in amount to exhaust its general orders to the Carnegie Company. In filling those orders from its other customers the plaintiff did not sell or dispose of the specific iron already agreed to be sold to the defendant, and it could, on receipt of an order from the defendants have still filled it by placing further orders with the Carnegie Company. It is manifest that, by the neglect of the defendant to keep its contract, the plaintiff was deprived of the profits resulting from the sale to the defendant.

The judgment should be affirmed, with costs.