## W. J. Holliday & Company v. Highland Iron & Steel Company.

[No. 6,536. Filed February 26, 1909.]

1. Contracts.—*Customs.*—*Inferences.*—Where two parties have been engaged for many years in the iron business, and have had extensive dealings with each other, the inference is that contracts executed by them were made with reference to the customs of such business. p. 346.

2. Contracts.—*Sales.*—*Manufactured Articles.*—A contract for the sale and delivery of various articles of common manufacture by an iron manufacturing company does not require, but clearly con-

W. J. Holliday & Co. r. Highland Iron, etc., Co.—43 Ind. App. 342.

templates the manufacture of such articles by the vendor. pp. 347, 354.

3. DAMAGES.—*Measure.—Breach of Contract.*—Actual compensation for the loss sustained is the proper measure of damages in case of a breach of contract, such damages covering only such loss as should reasonably be expected by the parties to flow from a breach thereof. p. 348.

4. DAMAGES.—*Breach of Contract.—Manufacturer.—Dealer.*—The measure of damages, sustained by a manufacturer, for the breach of a contract with a dealer to furnish such dealer certain goods of its manufacture, is the difference between the manufacturer's actual cost of manufacture and delivery, and the contract price. Roby, J., dissenting. p. 348.

5. DAMAGES.—*Breach of Contract.—Manufacturer.—Dealer.*—The measure of damages sustained by a dealer, by reason of a manufacturer's breach of contract to furnish certain articles to such dealer, is the difference between the contract price and the market price. p. 349.

6. DAMAGES.—*Sale of Goods.—Breach of Contract.*—The breach of a contract for the sale of goods in stock, by the vendor or purchaser, entitles the other party to damages, the measure thereof being the difference between the contract price and the market price. p. 349.

7. DAMAGES.—*Breach of Contract.—Manufacturing Goods.*—Where the purchaser repudiates his contract with a manufacturer, for certain goods to be manufactured, before such goods are manufactured, the vendor is not required to manufacture the goods and take chances of securing a market for them. p. 349.

8. DAMAGES.—*Speculative.—Cost of Manufacture.—Breach of Contract of Sale.*—The fact that the actual cost of the manufacture of goods is difficult of exact ascertainment does not render speculative the damages to which the manufacturer is entitled—consisting of the difference between the manufacturer's cost and the contract price—for the purchaser's breach of contract. p. 354.

9. TRIAL.—*Instructions.—Cost of Manufacture.—Time of.—Sales.*—In an action for damages for the breach of a contract by the purchaser for certain goods to be manufactured upon its order, where the cost of manufacturing varies according to the time of manufacture, it is the duty of defendant to present instructions covering such question, general instructions having been given by the court. p. 355.

10. DAMAGES.—*Breach of Contract.—Alternatives.*—Where a party to a contract, having the alternative, violates such contract, in estimating damages, that alternative must be selected which is least injurious to such person having the alternative. p. 355.

11. TRIAL.—*Instructions.—General.—Particular.—Duty of Party.*—Where the court gives correct general instructions covering the

subject, it is not reversible error that other proper instructions, not requested, were not given. p. 355.

12. APPEAL.— *Excessive Damages.— Weighing Evidence.*— Where there is some evidence sustaining the damages given, the Appellate Court will not weigh the evidence on such question. p. 356.

From Superior Court of Marion County (68,048) ; *Vinson Carter*, Judge.

Action by the Highland Iron & Steel Company against W. J. Holliday & Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Ovid B. Jameson, Frederick A. Joss* and *Linn D. Hay,* for appellant.

*Henry H. Hornbrook, Charles W. Smith, John S. Duncan* and *Albert P. Smith,* for appellee.

RABB, J.—This action was brought by the appellee against appellant to recover damages for the breach of executory contracts entered into between the parties. Appellant's demurrer to each paragraph of the complaint was overruled. Issues were formed, a jury trial had, and a verdict returned in favor of appellee; appellant's motion for a new trial was overruled, and judgment rendered on the verdict against appellant.

The errors assigned call in question the ruling of the court below upon the demurrer to the complaint and the motion for a new trial.

The complaint averred the making of the contract, and its breach. This was sufficient to make it good for at least nominal damages. The averments of the complaint, the evidence introduced, the instructions given by the court to the jury, and the verdict returned by the jury, all proceed upon the theory that the proper measure of damages for the breach of the contract sued upon was the difference between the cost of furnishing articles, which were the subject-matter of the contract, and the contract price. If this theory is correct, there is no error in the record. If it is not, the cause must be reversed.

The contract, which was the basis of the first paragraph of the complaint, was in the following terms:

"Terre Haute, Indiana, December 30, 1903.

W. J. Holliday & Company,
    Indianapolis, Indiana.
Gentlemen:
    We propose to furnish you 650 tons bar iron, assorted hardware specifications, as follows:

One hundred fifty tons to be specified for and shipped promptly. Price on same to be $1.30 rates and half extras, f. o. b. Indianapolis, Indiana, car-load lots.

Five hundred tons to be specified for and delivered prior to July 1, 1904. Price on same to be $1.35 rates and half extras, f. o. b. cars Indianapolis, Indiana, car-load lots.

The 500 tons to be specified for so that it will not be necessary for us to ship over 150 tons in any one month.

Direct shipments, less than car-load lots, five tons and over, to be billed at the above named prices, f. o. b. mill. Less than five ton lots, $1 per ton extra, f. o. b. mill.

Terms: Net cash thirty days, less one-half of one per cent discount for cash on receipt of material.

It is mutually understood that the full tonnage herein provided for will be furnished by us, and specifications furnished and iron received by you at the price stated above, regardless of market conditions.

Your acceptance hereof to constitute contract between us.

The Highland Iron & Steel Company.
Accepted January 22, 1904.
    W. J. Holliday & Company."

The contract upon which the second paragraph of the complaint was based, was in the same terms, except that the quantity of iron to be furnished was 500 tons, and the price was different, and the iron was to be ordered by appellant after the completion of the first contract, and up to September 1, 1904. It is averred in the complaint that there was a breach of the contract on appellant's part, in that it failed to furnish the appellee with orders and specifications for a part of the iron contracted for under the first contract, and notified appellee that it would not order

nor accept any of the iron contracted for in the second contract, and that appellee was at all times willing, ready and able to comply with the contracts upon its part.

At the time the contracts sued upon were made, appellee was the owner of rolling-mills, and engaged in the manufacture of iron, and appellants were merchants engaged in the iron trade. The contracts expressly required that the appellant furnish the appellee with orders specifying the sizes and dimensions of iron desired. The evidence disclosed that both parties to the contracts had been engaged for many years in the business, and were each familiar with the customs of the trade. It was shown that they had previously had large dealings together, and the inference is that the manner in which the appellee conducted its business was well known to appellant, and that the contracts were made with reference thereto, and to the customs and usages of the trade. It is disclosed that the contracts included within their terms a great many different sizes and dimensions of iron, which the appellant might select in making its specifications under the contracts; that in the manufacture of bar iron different rolls and machinery were used for manufacturing the different sized bars, and that changing from the manufacture of one sized bar to another required a change of the machinery, and that reasonable economy in the operation of rolling-mills required that the machinery of the same should be kept employed in the manufacture of a given size for a considerable length of time, and that it was impracticable to manufacture a small quantity of each size, as some particular customer might order; that appellee manufactured iron exclusively upon orders from its customers, and not for sale upon the open market; that it did not manufacture any specific lot of iron for any particular customer, but from the general product of its mills its customers' orders were filled in the order of their priority; that, by the customs of the trade, manufacturers of iron were entitled to a

reasonable time, considering the manner in which the mills were operated, after their customers' orders were placed with them, in which to fill the same. There was also abundant evidence from which the jury might have found that the goods contracted for had at all times a well-known market value.

It is contended by appellant that the contracts between the parties are contracts for the purchase and sale of the goods therein specified; that it is not a contract requiring appellee to manufacture the goods which it contracted to furnish; that its terms call for no goods of a peculiar or special make, but for a common article of merchandise manufactured by every rolling-mill in the country, and having a well-known market value, and that the rule invoked by appellee, and applied by the court below in the measurement of damages, that where a contract is made for the manufacture of an article not then in existence, and the contract is repudiated by the buyer before its execution is entered upon, the measure of damages for the breach is the difference between the cost of production and the contract price, does not apply.

We agree with appellant's premises thus far, that the contracts sued upon do not require that the appellee shall manufacture the goods called for by the contracts, and

2.   that the terms of the contracts allow it to furnish the goods from a stock already on hand, if it had such stock, or from the product of some other factory. Conceding this much, the contracts, read in the light afforded by the evidence, while they did not require the appellee to manufacture the goods, yet they clearly contemplated that the goods contracted to be furnished by appellee would subsequently be manufactured by it to fill the orders the contracts called for. The appellee was engaged in the manufacture of the kind of goods contracted to be furnished, not their purchase and sale. It carried on its business for the profits that were to be made in their manufacture, not for

348    APPELLATE COURT OF INDIANA,

W. J. Holliday & Co. v. Highland Iron, etc., Co.—43 Ind. App. 342.

such profits as might be made in dealing in them. Appellant, when it entered into the contracts with appellee, 3. knew that appellee was induced to make the contracts for the profit it expected to derive from the manufacture of the goods, and not otherwise, and that if there had been no breach of the contracts on appellant's part such profits would have been appellee's legitimate fruit of its performance. Compensation is the true measure of damages in all cases. For the breach of a contract the injured party may recover what he loses by the breach, and no more. The recovery is limited to, and extends to the limits of, all damages that the parties to the contract could have reasonably contemplated, at the time it was entered into, would be sustained by its breach.

In the case of *Kingman & Co.* v. *Western Mfg. Co.* (1899), 92 Fed. 486, 34 C. C. A. 489, the court laid down the rule for the measurement of damages for the breach of a 4. contract for the purchase and sale of personal property. Where a contract for the purchase of goods, said the court, is made with a manufacturer, and the contract is repudiated before entering upon its performance, the measure of damages is the difference between the amount it would cost the manufacturer to make and deliver the goods and their contract price, if that price is greater than the cost. While that case is not identical with the case at bar, and does not exactly harmonize with some of the decided cases, we think it correctly expresses the rule for the measurement of damages in cases of this character. Here the goods contracted for were not in appellee's hands at the time of the breach complained of. At the time of the making of the contracts both appellee and appellant expected the appellee subsequently to manufacture them. Appellee expected to derive a profit from their manufacture, and appellant knew this. Of that profit appellee was deprived by appellant's repudiation of the contracts;

NOVEMBER TERM, 1908. 349

W. J. Holliday & Co. v. Highland Iron, etc., Co.—43 Ind. App. 342.

and, to compensate it for what it lost by appellant's failure to carry out the terms of the contracts, it should be awarded the difference between the cost to it of manufacturing and delivering the goods and the price it was to receive for the same, if this can be ascertained with reasonable certainty.

Appellant complains that the court, in its instructions, applied a different rule for the measurement of damages for a breach by appellee of the contracts sued on 5. from that applied in favor of appellee for appellant's breach. This is not a good ground of objection to the instructions. The rule for the measurement of damages sustained by the buyer is not always a proper rule to apply to the seller. The inducements to enter into the contracts are not the same. If the seller be a manufacturer of the goods sold, as in this case, he expects to profit from the manufacture of the goods; while the buyer's expectation of profit from the transaction is from an entirely different source. If the article that is the subject-matter of the contract have a market value, the buyer's loss by breach of the contract will be fully compensated by awarding him the difference between the price at which he can obtain the article in the market and that which he has contracted to pay the seller. Where the article contracted to be sold is in the hands of the seller at the time of the breach, and 6. the buyer refuses to accept and pay for it, and the title remains in the seller, the same rule for the measure of damages applies to the buyer and seller alike, because the seller, having the goods on hand, can dispose of them in the market, and his damages can properly be measured by the difference between what he sold them for and the price the buyer agreed to pay. But where the contract between the parties is repudiated by the buyer before 7. any steps are taken toward its fulfilment, and the goods sold are not in the hands of the seller, the law

will not require him either to manufacture or procure the goods with which to fill the contract, and to take his chances of being able to find a market for them.

In the case of *River Spinning Co.* v. *Atlantic Mills* (1907), 155 Fed. 466, the suit was by the seller for a breach by the buyer of an executory contract, which the court holds was a contract for the sale of a specified quantity of yarn. The court say of the contract that it did not impose upon the plaintiff the obligation to spin the yarn. It might have furnished it from some other factory, or have bought it in the open market, but the parties to the contract contemplated that it would be spun by the seller, who was a manufacturer of yarn. The contract in that respect was precisely like the contract sued upon in this case. The court allowed as damages in that case the profits the plaintiff would make on the goods by their manufacture. The defendant contended, as is contended here, that the rule did not apply, and for the same reasons here urged, that the contract was one for the purchase and sale of a staple article of commerce, having a well-established market value; and that the true rule was the difference between the contract price and the market price of the goods at the time of the breach. The court, in affirming the case, and in refusing to adopt the rule insisted upon, said: ''This is a just rule to determine the loss of profits on goods ready for delivery at the time of breach. * * * It is not the true rule as to goods not then made and ready for delivery. It is a just rule for the buyer in a suit by him, because on the breach, having the money on hands, he may procure the goods on the market, and charge the seller with the difference. But to measure the damages of a seller who has not the goods on hand by the difference between the contract price and the market price is often impracticable, and would often be unjust. It would be equally unjust in a case where the seller was to make the goods himself, and in a case where he was to procure the goods from other manufacturers or jobbers,

NOVEMBER TERM, 1908. · · · 351·

W. J. Holliday & Co. r. Highland Iron. etc., Co.—43 Ind. App. 342.

If the vendor can make his goods for less than the market price, he is entitled to his actual profit. If his goods are to be bought, or to be made for him by other contractors, above the market price, then his profit would be smaller than the difference between the contract price and the market price. Only if the cost of production and the market price at the time of the breach were the same would the rule be just, and therefore the rule would seldom be a just mode of determining the loss of profits. That there is in a suit by a seller no proper basis for a distinction between goods which he is to manufacture (whether bound to manufacture or not), and goods which he is to buy, instead of to manufacture is apparent. * * * In figuring what profits the seller has lost, he should be charged with all expenditures which he would have been to for getting the goods in hand for delivery to the buyer, whether he was to make them himself, * * * have them made by other manufacturers, or was to buy them ready made. It is enough to show what would have been the seller's cost of acquiring the goods. The mode of acquisition was irrelevant to the rule that, in order to compensate the seller, the buyer who has chosen to break a contract, should pay the seller the profit he would otherwise have made."

In the case of *Roehm* v. *Horst* (1890), 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953, the action was by a seller, a merchant, against the purchaser, for a breach of an executory contract for the sale of certain bales of hops, the court holding that the measure of damages was the difference between what it would cost the seller to procure and deliver the hops in accordance with the terms of the contract and the contract price. In passing upon the question the court said: "If the vendor has to buy instead of to manufacture, the same principle prevails, and he may show what was the value of the contract by showing at what price he could have made subcontracts, just as the cost of manufacture in the case of a manufacturer may be shown."

In the case of *H. D. Taylor Co.* v. *Niagara Bedstead Co.* (1906), 102 N. Y. Supp. 173, 52 Misc. (N. Y.) 356, the court approves the rule laid down in the case of *Belle of Bourbon County* v. *Leffler* (1903), 87 Hun, App. Div., 302, 84 N. Y. Supp. 385, in which it is said. "Where the purchaser of goods to be manufactured repudiates the contract in advance of the manufacture of the goods, * * * the measure of damages is the difference between the cost of manufacture and the contract price." The court in *H. D. Taylor Co.* v. *Niagara Bedstead Co., supra,* said: "It makes no difference in principle whether the vendor is himself the manufacturer, or procures others to manufacture, or can go into the open market and purchase for delivery the goods he, in turn, has agreed to sell to others." The rule as here announced, we think, is sustained by *Cameron* v. *White* (1889), 74 Wis. 425, 43 N. W. 155, 5 L. R. A. 493; *Hadley Dean Plate Glass Co.* v. *Highland Glass Co.* (1906), 143 Fed. 242, 74 C. C. A. 462; *Duke* v. *Norfolk, etc., R. Co.* (1906), 106 Va. 152, 55 S. E. 548; *Chapman* v. *Kansas City, etc., R. Co.* (1898), 146 Mo. 481, 48 S. W. 646; *American Contract Co.* v. *Bullen Bridge Co.* (1896), 29 Ore. 549, 46 Pac. 138; *Dryfoos* v. *Uhl* (1902), 69 Hun, App. Div., 118, 74 N. Y. Supp. 532; *Jas. H. Rice Co.* v. *Penn Plate Glass Co.* (1899), 88 Ill. App. 407; *Kimball Bros.* v. *Deere, Welles & Co.* (1899), 108 Iowa 676, 77 N. W. 1041; *Hauser, Brenner & Fath Co.* v. *Tate & Co.* (1899), 105 Ky. 701, 49 S. W. 475; *Hinckley* v. *Pittsburgh, etc., Steel Co.* (1886), 121 U. S. 264, 7 Sup. Ct. 875, 30 L. Ed. 967; and by the reasoning of the court in the case of *Masterton* v. *Mayor, etc.* (1845), 7 Hill (N. Y.) 61, 42 Am. Dec. 38.

We are referred by appellant to the case of *Dolph* v. *Troy Laundry Mach. Co.* (1886), 28 Fed. 553, as an authority in support of its contention that the proper measure of damages, as applied to the case at bar, is the difference between the contract price and the market price of the ar-

ticles contracted for. This authority fully supports appellant's contention, but it is not in harmony with the decided cases. We are also referred to the cases of *Rhodes* v. *Cleveland Rolling-Mill Co.* (1883), 17 Fed. 426, *Heiser* v. *Mears* (1897), 120 N. C. 443, 27 S. E. 117, *Tufts* v. *Grewer* (1891), 83 Me. 407, 22 Atl. 382, *Hale* v. *Trout* (1868), 35 Cal. 229, and *Black River Lumber Co.* v. *Warner* (1887), 93 Mo. 374, 6 S. W. 210, as being in support of the rule appellant contends for. These authorities, we think, are clearly distinguishable from the case at bar, in that in those cases the goods, which were the subject-matter of the contract, were in the seller's hands when the breach occurred. Here the contract was violated before the goods were manufactured, and were not in the possession of the seller at the time, and after the breach it was under no obligation to manufacture or procure them.

None of the decisions of our own courts, either Supreme or Appellate, in anywise conflict with the views that are here expressed, and we think that they are recognized by a recent decision of the Supreme Court in the case of *Connersville Wagon Co.* v. *McFarlan Carriage Co.* (1906), 166 Ind. 123, where the court, on page 134, after discussing the question of the measure of damages as applied to the breach of contract by the seller, uses this language: "In speaking of the general rule which disallows unearned profits for a breach of contract, clearness requires that the distinction should be pointed out between a suit for a breach, where the complaining party seeks to recover the difference between the agreed price and the ascertainable value of performance, and a claim for damages based upon something which is purely hypothetical." Citing, *Masterton* v. *Mayor, etc., supra; Philadelphia, etc., R. Co.* v. *Howard* (1851), 13 How. 307, 14 L. Ed. 157.

Appellant insists that the measure of damages applied by the court in this case was not the proper measure, be-

354     APPELLATE COURT OF INDIANA,

W. J. Holliday & Co. *v.* Highland Iron, etc., Co.—43 Ind. App. 342.

cause of the uncertainty in the method of estimating the damages. It is the contention that because the cost of manufacturing the goods for the appellant, separate and apart from the cost of operating appellee's mills and manufacturing other goods, was not ascertained, therefore the rule applied by the court was improper; that, inasmuch as by the terms of the last contract the appellant had the option of placing its orders for goods at any time from the completion of the first contract up to the first of September, 1904, and inasmuch as the appellee's evidence showed that the cost of manufacturing the goods was different during the months of July, August and September, this constituted such an element of uncertainty as rendered the rule an improper one; that it is shown by the evidence that there were a great many different sizes of iron that were to be furnished under the contract, at different prices—certain sizes, called "base sizes," that were to be furnished at a uniform price, and other sizes, called "extras," that were to be furnished at an extra price; that the contract gave to the appellant the right to designate what particular sizes of iron should be furnished, and under the terms of the contract it might have demanded that all of the iron should be of the base sizes, or that all of it should be of the extra sizes, and that, by reason of this uncertainty, no proper basis could be fixed for estimating the cost of production.

So far as the first point made by appellant is concerned, we think the contracts contemplated the manufacture of the goods that were to be furnished by the appellee in the appellee's usual course of business and in connection with the operation of its plant, as the evidence shows it was conducted; and we think the evidence was sufficiently clear to furnish the jury with a basis for estimating the cost to the appellee of producing at its mill the goods the contracts called for.

As to any uncertainty about the time at which the rule

NOVEMBER TERM, 1908.        355

W. J. Holliday & Co. v. Highland Iron, etc., Co.—43 Ind. App. 342.

should have been applied to the cost of production, we think that if appellant desired more specific instructions upon the subject than were given by the court, it was its duty to ask for them.

Where a contract is entered into between parties, giving to one of them an alternative, and the party having the right of such alternative violates the contract, in estimating the measure of damages for a breach of such contract that alternative must be accepted which will be least injurious to the party having the right to exercise the choice. 1 Sedgwick, Measure of Damages (8th ed.), §421. The appellant here had the right to present appellee with its orders for the goods contracted for that might have required their manufacture in July, August or September. It also had the right to choose the size and dimensions of the iron that should be furnished under the contracts. If there was an advantage to be gained for the appellant by the application of the rule as to the cost of producing the article in one of these months, rather than another, or by the exercise of its right to select some particular size of iron, that was covered by the contracts, rather than another, then it should have asked for proper instructions to the jury that would correctly have guided them in the enforcement of such right.

The instruction given to the jury was correct so far as it went, and it was not reversible error that other proper instructions, not asked for by either party, were not given. Crum v. State (1897), 148 Ind. 401; Cincinnati, etc., R. Co. v. Smock (1893), 133 Ind. 411; Du Souchet v. Dutcher (1888), 113 Ind. 249; Foxwell v. State (1878), 63 Ind. 539; Eichel v. Senhenn (1891), 2 Ind. App. 208; Lake Erie, etc., R. Co. v. McHenry (1884), 10 Ind. App. 525; Tracy v. Hackel (1898), 19 Ind. App. 133, 65 Am. St. 398; McAfee v. Montgomery (1898), 21 Ind. App. 196.

Complaint is also made that the assessment of damages

was excessive. There was evidence from which the jury might assess the damages returned by them in their verdict. We have no authority to correct any mistake they may have made in that respect. We think no error appears in the record.

Judgment affirmed.

Roby, J., dissents.

## DISSENTING OPINION.

Roby, J.—The object of the law is to make the injured party whole—to furnish compensation. Probable profits ought not to be the rule of damages, except as necessity makes them so. This necessity may arise when the article purchased has no market value. When the article manufactured has a fixed market value there is no necessity for resorting to the proof of probable profits, as such profits are too speculative and uncertain to be considered as damages. *Acme Cycle Co.* v. *Clarke* (1901), 157 Ind. 271; *Western Gravel Road Co.* v. *Cox* (1872), 39 Ind. 260; *Montgomery County, etc., Soc.* v. *Harwood* (1891), 126 Ind. 440, 10 L. R. A. 532; *Rahm* v. *Deig* (1889), 121 Ind. 283. I do not think that the seller of commodities which have a fixed and provable market value, such as sugar and iron, can secure a different rule of damages for himself, by reason of the fact that he manufactures, as well as sells, or takes orders in advance of delivery. The difference between the contract price and the market price measures his damage, since such commodities are, in his hands, worth what they will sell for in open market. *Rahm* v. *Deig, supra; McComas* v. *Haas* (1886), 107 Ind. 512; *Dwiggins* v. *Clark* (1884), 94 Ind. 49, 48 Am. Rep. 140. I therefore dissent.