COFIELD *v.* CLARK.

DELIVERY — *of personal property, when complete.* Upon sale of personal property which is in the possession of a bailee of the seller, delivery of an order on the bailee may be sufficient to transfer the possession of the property to the purchaser.

BUT IF the bailee has not the property in his custody at the time of the execution of the order, the rule is otherwise.

*And upon sale of cattle* alleged to be in the possession of a third party, if the cattle were not in such possession, the seller's order for them, addressed to such third party and delivered to the purchaser, will not effect a delivery of the cattle.

CONTRACT — *part performance — action not barred by.* Upon sale of cattle, delivery and acceptance of part will not bar the purchaser's action to recover damages for a failure to deliver the remainder.

*Not merged in a subsequent contract which is without consideration.* And if the purchase-money was paid at the time of sale, and there was a failure to deliver according to the contract, the purchaser's right of action was then complete; and a subsequent agreement to the effect that the cattle should be delivered at a later day, was not binding upon either of the parties, there being no consideration to support it.

*Discharge after day of performance.* In so far as the purchaser was willing to accept, and did accept the cattle under the new arrangement, the con-

tract was discharged ; but as to all which were not delivered, the pur-
chaser may have his action.

PLEADING — *special damages must be averred.*   In an action to recover damages
for a failure to deliver cattle pursuant to a contract of sale, evidence of
the value of such cattle in a foreign market cannot be received upon the
question of damages unless it is averred in the declaration that the cattle
were bought for that market.

MEASURE OF DAMAGES *in action for non-delivery of chattels.* In such action
where the purchase-money was paid at the time of sale, the measure of
damages is not the amount of the purchase-money, nor the sum which
might have been obtained upon sale of the cattle at any time after the
day of sale and prior to the trial, but the value of the cattle at the time
and place of delivery with interest thereon to the day of trial.

## *Appeal from District Court, Arapahoe County.*

THE declaration contained five special counts, in some of
which the plaintiff declared upon a promise to deliver sixty-
eight head of cattle, and in others upon a promise to deliver
sixteen head of cattle. In each count it was averred that the
consideration had been paid but the amount of it was variously
stated.    The allegation of damage was substantially the
same in each count, and in one of the counts was as follows :
" Whereby the said plaintiff has lost and been defrauded
of, as well the said sum of money so by him paid to the
said defendant as aforesaid, as of divers great gains and
profits which might and would otherwise have arisen and
accrued to him from the delivery of the said cattle to the
said plaintiff as aforesaid, to wit : at the county aforesaid."
Nothing was averred as to the use which the plaintiff in-
tended to make of the cattle nor as to the sale of them in
any particular market. At the trial evidence was given
tending to prove that at the time of the sale, Cofield, the
defendant, said that the cattle were at Hamilton's ranch;
that they were being coralled every night, and that they
could be obtained without difficulty ; that soon after the
sale the plaintiff, Clark, sent up to Hamilton's ranch for the
cattle, but did not obtain them ; that upon sending again,
some eight or ten days afterward, he received fifty-two head.
Testimony was also given to show the value of the cattle in
Cheyenne, Wyoming territory, and the plaintiff, Clark, was

allowed to testify that he bought the cattle for the purpose of sending them to Cheyenne for sale. The appellant also offered to prove that after the delivery of the fifty-two head, he got together the remainder of the thirty-four yoke and notified appellee of the fact and requested him to take them away, and upon objection by appellee's counsel, the testimony was excluded. Appellant asked the court to instruct the jury as follows: "If the jury believe from the evidence that the defendant sold the plaintiff a certain number of cattle and that the plaintiff afterward received and accepted a lesser number, then the plaintiff cannot recover unless the jury further believe that the plaintiff offered to return the cattle which he did receive from the defendant."

But the court refused to so instruct, and gave the following in lieu thereof: "The jury are instructed that if they believe from the evidence that under the contract of sale for the cattle in controversy, the defendant was to deliver the same at the ranch of J. G. Hamilton & Co., in Douglass county, as soon as the plaintiff applied for them at said ranch, and that the plaintiff, by his authorized agent or agents, subsequently applied for said cattle at said ranch, and that, upon such application, the defendant failed to deliver the whole of the cattle sold to the plaintiff, then the verdict of the jury should be for the plaintiff."

The instruction as to the measure of damages is substantially stated in the opinion of the court. The jury found for the plaintiff damages $1,079.17, for which judgment was entered.

Messrs. SAYRE & WRIGHT, for appellant.

Mr. E. L. SMITH, for appellee.

BELFORD, J. Clark sued Cofield, to recover damages for breach of contract in failing to deliver sixteen head of cattle. It appears from the evidence that, on the 18th day of July, 1871, Cofield sold Clark sixty-four head of cattle, for the consideration of $4,000, which consideration was made up of $1,000 in cash, and the conveyance of a tract of land

valued at $3,000. On the day the sale was negotiated, Cofield discovered that he owned four more cattle, which he agreed to put in at $200, making, in all, $4,200, which was paid, and upon the payment of which Cofield executed and delivered to Clark the following papers :

"DENVER, *July* 18, 1871.
"*George T. Clark, bo't of J. B. Cofield :*
"Thirty-four yoke of cattle, branded D. C. on right hip, and also branded on same side with H., being part of lot brought to ranch 5,'71. Price paid, forty-two hundred dollars ($4,200).
" (Signed)        J. B. COFIELD."

"DENVER, *July* 18, 1871.
"*Mess. J. G. Hamilton & Co.:*
" Please deliver to George T. Clark thirty-four yoke of cattle now in your possession, belonging to me, branded D. C. on right hip, also branded on same side with H., and oblige
" Yours, truly,
"JOSEPH B. COFIELD."

On the 20th of July Clark sent Sherwood to Hamilton's ranch, located some twenty or thirty miles distant from the point where these negotiations took place, for the cattle. Sherwood failed to get them. It appears that, in the winter preceding, they were scattered by the severe storms, and that Hamilton had failed to collect them all. Eight days later, in pursuance of an arrangement made with Hamilton's herder, Sherwood returned to the ranch and received for Clark fifty-two head of these cattle, and from that time to the day of trial the residue had not been delivered. It clearly appears, from the evidence, that Clark's object in making the purchase was to take them to Cheyenne, but for what specific purpose is not apparent. It also appears that Cofield stated to him that the cattle were at Hamilton's ranch, and that they could be procured on demand. With this understanding the sale was negotiated, and in this light the subsequent transactions must be viewed. It is claimed

by the appellant that the sale was completed upon the payment of the money by Clark, and the delivery to him, by Cofield, of the order on Hamilton, and that Cofield is not chargeable, in damages, for the failure to deliver all the cattle.

Where personal property is, from its character or situation at the time of sale, incapable of manual delivery, the delivery of the bill of sale is sufficient to transfer the property and possession to the vendee. *Gibson* v. *Stevens,* 8 How. 384. And it has been held that a written order by the seller of goods or chattels to the buyer, directing the person in whose care the goods or chattels are to deliver them, is a sufficient delivery to vest in the vendee the right of property and possession. *Jennings* v. *Webster,* 7 Cow. 262; *McCormick* v. *Hodden,* 37 Ill. 370; *Pleasants* v. *Pendleton,* 6 Randolph, 473.

This doctrine, however, is qualified by one exception, which courts uniformly recognize, namely, that the order is only considered as the delivery of the chattels themselves, when they are susceptible of an immediate delivery. *Stevens* v. *Stewart,* 3 Cal. 140. It is clear, from the evidence, that, at the time of the sale, all the cattle were not at Hamilton's ranch, and had not been there since the preceding winter.

They were then not in a deliverable condition, and it would be doing violence to the spirit in which the sale was negotiated to hold that this order given by the vendor to the vendee, on a person in whose possession the cattle were not, and had not been for months, completed the sale, and exempted the vendor from all risk. Cofield assured Clark, before and at the time of the purchase, that the cattle were at Hamilton's ranch, and that they were in a condition for immediate delivery. In this, he was mistaken, and in this respect his contract has been violated and broken. When a time and place is appointed for delivery, the vendor is bound to have the chattels ready at such time and place. Story on Sales, § 391; *Smith* v. *Gillett,* 50 Ill. 290.

It is further claimed by the appellant, that in accepting the fifty-two head, Clark relinquished his right to recover

for the others not delivered.   We have been unable to dis-
cover on what principle of law this claim rests, unless it be
that the old contract which had been made, had been sup-
plemented by a new one, and of this we will speak here-
after.   Our attention has been called to the case of *Miner*
v. *Bradley*, 22 Pick. 457.   That was an action for money
had and received.   The plaintiff bought a certain cow, and
four hundred pounds of hay, for the sum of $17.   He re-
ceived the cow, and afterward demanded the hay, which
was refused by the defendant, who had used it.   The de-
fendant objected to the plaintiff's recovery, on the ground
that it was an entire contract, that the plaintiff could not
recover back the price paid, or any portion of it, withuot
rescinding the whole contract, and this could not be done
without returning the cow.   And the court held that this
defense was good, for the very obvious reason that as the
cow and hay were bought for one gross sum, there were no
means of ascertaining how much was intended for one, and
how much for the other.   There being no price agreed upon
and paid for the hay, none could be recovered back, and
that in that form of action, only the exact amount of the
money paid could be recovered back.   It was further held,
that if the plaintiff had brought his action on the contract
for damages, the rule would have been entirely different,
and the plaintiff could have recovered.   The latter course
is the one which Clark has pursued.   He is not seeking to
rescind the contract, but rather to enforce it.   He is not seek-
ing to recover back the price paid, but damages occasioned
by a failure to deliver the property.   On the trial the plain-
tiff was allowed to introduce evidence over the objection of
the defendant, as to the price of cattle in Cheyenne.   There
was no allegation in the declaration that the plaintiff had
bought these cattle to sell them in that market, and in the
absence of such averment, we are clearly of the opinion
that the evidence was inadmissible.   In *Squire* v. *Gould*,
14 Wend. 159, it is said : " Where damages actually sus-
tained, do not necessarily arise from the act complained of,
and, consequently, are not implied by law, in order to pre-

vent surprise to the defendant, the plaintiff must state, in his declaration, the particular damage which he has sustained, or he will not be permitted to give evidence of it upon the trial." Mr. Chitty says, "general damages are such as the law implies, or presumes to have accrued from the wrong complained of. Special damages are such as really took place, and are not implied by law. It does not appear necessary to state the former description of damages in the declaration, because presumptions of law are not, in general, to be pleaded or averred as facts. But where the law does not necessarily imply that the plaintiff sustained damage by the act complained of, it is essential to the validity of the declaration, that the resulting damage should be shown with particularity." It certainly cannot be said that when cattle are to be delivered in Colorado, that the law implies or presumes that they are to be, or will be, sold in Wyoming. It was, therefore, necessary to allege this fact specially, if he desired to recover the market price at Cheyenne, and the plaintiff having failed to do so, the action of the court, in admitting the evidence as to the value of cattle at that point, was erroneous.

On the trial the defendant offered to show that after the acceptance of the fifty-two head of cattle, and within a reasonable time, the remaining sixteen were found, and that the plaintiff was notified of it, and requested to take them away. This he was not allowed to prove. Let us inquire what the real relations of the parties were at the breach of the contract. Clark having paid the purchase-money, in other words, having done every thing he was required to do, had a perfect right of action against Cofield upon his failure to deliver the cattle at the appointed place. He could have rescinded the contract, and recovered back the purchase-money and interest, or he could have maintained an action for damages growing out of the breach. He resorted to neither at that time. After the breach he accepted part of the cattle, and it is claimed that he agreed to take all of them, if the same could be delivered within a reasonable time. Conceding that a new agreement

was made, it seems to us that in this case it is lacking in the essential element of a consideration. Clark had parted with his money, Cofield was under obligation by the contract of sale to deliver all the cattle. The new agreement did not, in any respect, alter the relations of the parties. The delivery and acceptance of the fifty-two head operated as a discharge *pro tanto* of the duties Cofield assumed when entering into the contract of sale, and the jury would be warranted in finding that the delivery was intended and accepted, as of the day specified in the original undertaking. The breach being complete, the delivery of these fifty-two cattle was but in affirmation of what the defendant was bound to perform by his original agreement, and all that was done was but in fulfillment of it. *Hansborough* v. *Peck*, 5 Wall. 497. So far as the new arrangement was executed, it was valid, not by reason of any inherent virtue it possessed of itself, but on the ground of performance and acceptance ; beyond this point it was simply a nullity.

Had the action of Clark in entering into this new arrangement placed Cofield in a 'position wherein a non-acceptance of all the cattle under it would have worked a positive injury or loss to Cofield, the rule would be otherwise. But there is nothing here to show that the new arrangement contemplated or had that effect, and in this respect we think this case is clearly distinguished from those wherein it has been held that a promisee may recover for services rendered the promisor, although he had violated a written contract which stipulated for the performance of these same services. The principle on which these cases rest is, that the promisor, by entering into the new arrangement, has induced the promisee to assume a position from which he cannot extricate himself without loss ; as for instance, where the latter has given his labor in erecting a house or the like for the former. In such a case the promisor has not only induced the promisee to labor, but has actually received and availed himself of the benefits of the same, and these circumstances constitute the consideration on which the new arrangement is maintained. In such a case the contract becomes binding

and effectual, because, to hold otherwise would be to allow one party to perpetrate a fraud or injury on the other. One has given his labor, which, for illustration, we may call his property, to the other; the relations of the parties have, by that act, changed; the former has suffered loss, the latter derived a gain; and it would be a manifest violation of the plainest principles of justice to hold that an arrangement, under which such relations sprung into existence, had not a consideration to support it. In the case at bar, Cofield has not parted with the sixteen head of cattle, for the non-delivery of which this action is brought. His condition, in no sense, is made worse by the new arrangement than it was at the moment it was entered into. For these reasons, we think that the court committed no error in rejecting the offer made by the defendants.

The instruction given by the court to the jury, on the subject of damages, seems to be erroneous in every respect. They were told that the measure of damages to which the plaintiff was entitled was, first, the amount of money advanced by the plaintiff for the cattle not delivered; second, in addition to such amount paid by him for the cattle not delivered, the excess of money, if any, which the jury believe, from the evidence, the plaintiff might have realized on the sale of such cattle, over the amount paid for them at any time after the sale of the cattle to the plaintiff; thirdly, interest on the amount paid for the cattle not delivered, from the time of payment, at ten per cent per annum. This instruction of the court contemplates at least two things: first, a recovery of so much of the purchase-money as was paid for the cattle not delivered; secondly, the profits the plaintiff might have realized by the sale of the cattle, any time between the date of the breach and the time of the trial.

As to the first proposition, it is only necessary to say that the plaintiff has not brought his action to recover the purchase-money. He paid a gross sum for a gross number of cattle, and, having received but part of them, it would be difficult to determine how the price, as to those not delivered, could be fixed. This difficulty would not exist in a case

brought to recover back the money paid upon a rescission of a contract, for the reason that the part of goods received is, in such case, returned. No circumstance would call for an apportionment, and none would be necessary. All the money, in such a case, is due, and not a part. But, in an action brought to recover damages for a breach, the party suing treats the contract as still in existence, and goes, not for the consideration advanced by him, but for the value of the article stipulated to be delivered. As to the second proposition, it may be said that, in general, where a man contracts to deliver any article besides money, and fails to do it, the rule of damages is the value of the article at the time and place of delivery, and the interest for delay. To this rule an exception has grown up in a number of States. It had its origin in sale of stocks, and amounts to this: that, when the money has been paid in advance, and the vendor subsequently refuses to deliver them, the purchaser is not confined to their value at the time when they should have been delivered; but, if the goods have risen in value, he may recover their value at the time of trial. This exception is made to rest on the principle that, had the article been delivered according to contract, the vendee might have had the benefit of that price; or, if he had not parted with his money, he might have rescinded, on failure to deliver, and with his money purchased the article elsewhere, and had the benefit of the rise; but, having parted with his money, it is out of his power to purchase such articles. It has been generally held in this country that a party who has failed to fulfill a contract cannot be held reliable for remote, contingent and uncertain consequences, or for speculative results which may have ensued on his breach of duty, although this may be traceable to that cause.

The reason is that damages of such a nature cannot be deemed to have entered into the contemplation of the parties when they agreed together. Parties entering into a contract contemplate its performance, and not its breach. They expect to execute it, not violate it. If the delivery is to take place at a future day, it can be reasonably said that it was

in the contemplation of the vendor, that the vendee should realize the enhancement of price that takes place between the day of the contract and the day of the delivery. If the performance, and not the breach, is contemplated at the time of entering into the contract, can it be said that the vendor contemplated that not only a breach would take place, but that subsequently thereto the market price would rise.

In *Shauts* v. *Ten Eyck*, 3 Caines, 116, LIVINGSTON, J., says: "The safest general rule, in all actions on contracts, is to limit the recovery, as much as possible, to an indemnity for actual injury sustained, without regard to profits, which the plaintiff has failed to make, unless it shall clearly appear from the agreement that the acquisition of certain profits depended on the punctual performance, and that he had assumed to make good such loss." Was it in the contemplation of the parties that after the breach, Clark would go into the market, and buy more cattle? It seems to me that the exception lies entirely inside of the domain of speculation, and is a stealthy approach toward the overthrow of that doctrine which the concurrent authority of all courts has established, namely, that a party guilty of a breach of contract shall not be liable for damages not in contemplation of the parties at the time of making the contract. It seems to me that whenever a person, on legal consideration, agrees to do a certain act, and in the event of his not doing it, the damages are not stipulated by the parties, the law, on the ground of reason and justice, implies that the person in default shall pay the damages accruing from the non-performance. If he fails to perform what he has agreed to, it is just, as a reasonable substitute, that he should pay the precise value of the property he agreed to deliver at the time when it should have been delivered, and where the money has been paid in advance, the vendee should be entitled to recover, in addition to the value, the interest on the same, up to the trial. *Bickel* v. *Colton*, 41 Miss. 368. When you step outside of this rule, you at once enter the field of conjecture and speculation, which, in view of all

the decisions I have examined, is forbidden ground. I concede that when it clearly appears that the article was to be delivered for some specific object, known to both parties at the time, and that thus a loss within the contemplation of parties, has been sustained, the rule is, and should be, different. When a party knows the hazards that may attend his default, he is presumed to assume the burdens that grow out of his misconduct. Regarding the second proposition announced in the instruction given by the court, as tantamount to a declaration that profits which might have been realized by the vendee, had the vendor completed his contract, could be recovered, we cannot give it our sanction, especially where there is nothing in the evidence to show for what specific purpose these cattle were purchased.

Judgment reversed, and cause remanded for a new trial.

*Reversed.*