## *In re* KELLY.

### (*District Court, S. D. New York.*   June 27, 1892.)

BANKRUPTCY—RE-EXAMINATION OF CLAIM—SHORT DELIVERY UNDER CONTRACT—RESCISSION—NO WAIVER CF PRIOR DAMAGES—A BAR TO SUBSEQUENT DAMAGES.

 The bankrupt contracted to make weekly deliveries of oleomargarine or fat in specified quantities.   Deliveries of less amounts were made weekly for 10 weeks, complaint being made of the short deliveries, and notice being given that damages therefor would be claimed.   At the end of 10 weeks further acceptance was refused by the vendees.   *Held*, on re-examination of claim against bankrupt, that the weekly acceptance of part of the amount contracted for was no waiver of damages, as provided by the contract, for nondelivery of the residue; that the rescission of the contract at the end of 10 weeks was justifiable, and was no release or waiver of the right of action already accrued for the previous short deliveries, but that no damages could be claimed for the nondelivery of the amounts due after the rescission.   A readjustment of the claim was ordered on the above basis.

In Bankruptcy.   Re-examination of claim.   Claim reduced and allowed.

The claim was founded on a contract made by the bankrupt to deliver oleomargarine or fat in specified quantities weekly.   He made deliveries of less amounts weekly for 10 weeks, complaint being made and notice given that damages would be claimed therefor.   At the end of that time further acceptance was refused.   Mr. Nottman, of counsel for the claimant, caused this entry to be made upon the record:

"Mr. Nottman states that this claim was filed on the 26th day of November, 1877, and that no specifications or objections had ever been filed, nor any criticism raised, until a notice was served on the ——— day of August, 1883, to the effect that the claim would be brought up for examination before the register in bankruptcy on the ——— day of September, 1883; that the assignee has lost his right, by reason of laches and delay and failure to file specifications, to move for or have any re-examination of the claim."

At the hearing, the assignee and his counsel stated that the original claim, which, by the printed case, appeared to have been sworn to November 16, 1877, was lost and mislaid, and an amended claim, or, rather, deposition for proof of claim, was filed afterwards by the claimant at the request of the then counsel for the assignee, and that, as soon as this amended claim was filed, the assignee forthwith obtained an order from the register for the re-examination of the amended claim, and as soon as this was done the original claim turned up, it having been mislaid in the office of the clerk of the United States district court; so that one reason of the delay of the assignee in moving for the re-examination of the proof of claim was the loss of the original claim, and delay of the claimant in filing an amended claim. A second excuse for the delay was that proceedings were instituted by some of the creditors to have the adjudication of the bankrupt, as such, declared null and void, and litigation on this question continued several years; and, furthermore, the assignee did not receive assets from the bankrupt estate from which he was able to realize any money until about the time he moved to have the claim re-examined.

*Butler, Stillman & Hubbard* and *Mr. Nottman,* for the creditor.
*William A. Abbott,* for the assignee.

BROWN, District Judge. The record does not show the date when the claim was first filed. If the statements of counsel be taken as to this date, and the reasons for the delay, there were no such laches as properly to exclude a re-examination.

2. The bankrupts, for 10 weeks after the time at which deliveries were agreed to be made by the contract, made short deliveries, instead of the whole amount agreed on. Mr. Thalon, the agent in New York, frequently complained, or transmitted the complaint of his principals, on account of these short deliveries. The acceptance by him of so much of the oleomargarine or fat as he could get, was no waiver of the right to the rest, nor of his lawful claim under the contract for the special damages agreed on in case of short delivery.

3. The letters of the 29th of December, 1876, and January 3, 1877, terminated the contract, so far as respected any further future deliveries under it; but this was neither a waiver, nor a release, of the liability, or of the vested right of action for damages, which had already accrued on the bankrupts' previous defaults.

4. The evidence, in my judgment, is not sufficient to establish any express waiver by Mr. Thalon of the delivery of the weekly amounts required by the contract, or any promise or intimation, or understanding, from him that the liability for short deliveries would be waived; nor is

there any evidence that Mr. Thalon had any power to make any such waiver. The correspondence shows that the bankrupts fully understood that their short deliveries under the contract subjected them to a legal obligation in consequence. They desired to be relieved from it, but they never obtained any such release; nor do I find that the short deliveries made after the request for such a release, or waiver, were made by them, or were received by Mr. Thalon, on any understanding that their liability for any short deliveries would be waived, or that the contract was in any respect to be varied. The verbal testimony to that effect is insufficient; it was given eight years after the transaction; it was denied by Mr. Thalon, and finds no support in any writings.

The amount delivered for 10 weeks was only about one fifth of the amount agreed to be delivered, and was almost wholly fat. The complaints had been numerous, and no substantial improvement made in the bankrupts' deliveries. The creditor was justified in putting an end to further deliveries under such circumstances, and to claim damages for the breaches of contract up to that time. For there was never a single performance by the bankrupts of their contract, and never any tender of performance.

It follows that the creditor, Jules Mason, is entitled to prove at the stipulated rate of 1 cent per pound for 2,613,472 pounds, the deficiency during 10 weeks up to the 29th of December, 1876, amounting to $26,134.72, to which amount, with interest from that date, the claim should be reduced, and for that amount allowed.