E. I. DUPONT DE NEMOURS POWDER COMPANY v. UNITED
ZINC AND CHEMICAL COMPANY.

Argued November 10, 1913—Decided February 24, 1914.

1. Defendant agreed to sell and plaintiff to buy not less than two
thousand tons and not more than three thousand tons of mixed
acid during the calendar year; the seller was to furnish the mix-
ture in such proportion as the buyer might direct, subject to
certain limitations; shipments were to be made in approxi-
mately equal monthly installments upon orders from the buyer;
the seller early made default in the quantities delivered and
acknowledged its inability to deliver the quantity required; it
did, however, deliver all that was ordered, which was less than
two thousand tons; in an action for damages by the buyer—
*Held—*

(1) That there was no completed contract at the start for the
excess over two thousand tons, since the minds of the parties
had not met either as to quantity or quality, but there was a
continuing offer to deliver the additional one thousand tons;
that the circumstances justified an inference of a tacit agree-
ment for the whole three thousand tons, but that it was error
not to leave the question to the jury.

(2) That whether the defendant was liable for failure to deliver
up to two thousand tons or three thousand tons, in the absence
of specific orders, depended on whether the contract was still
subsisting or whether it had been legally terminated so that it
only remained for the defendant to make compensation for the
breach, and that under the facts of this case, if the jury found
that the contract was for three thousand tons, this question also
was for the jury.

2. The rule of *Blackburn* v. *Reilly*, 18 *Vroom* 290, has been changed
by section 45 of the Sale of Goods act. *Comp. Stat., p.* 4657.

On defendant's rule to show cause.

Before Justices SWAYZE and BERGEN.

For the plaintiff, *George S. Hobart* (*Collins & Corbin*
on the brief).

For the defendants, *Albert C. Wall,* and *Henry D. Ashley*
(of the Missouri bar).

The opinion of the court was delivered by

Swayze, J. In this as in most cases the difficulty lies not in the principles of law, but in the analysis of the facts. The powder company desired a supply for the calendar year 1909 of what was called mixed acid for its Ashburn works. It made a written contract with the chemical company, the defendant, to supply the acid for that year. To quote the language of the contract, "the seller agrees to and does sell to the buyer and the buyer agrees to and does purchase from the seller, not less than two thousand tons and not more than three thousand tons of mixed acid." By mixed acid was meant a mixture of nitric and sulphuric. The seller agreed to furnish it in any proportion the buyer might direct, but in no case was a mixture to be demanded stronger in nitric acid than six parts of nitric to one of sulphuric. Shipments were to be made in approximately equal monthly installments upon orders from the buyer. Orders for one thousand five hundred and eighty-nine tons were given and filled. Unfortunately the capacity of the defendant's plant proved inadequate from the start to furnish the monthly installments even of the smaller quantity, two thousand tons. The deficiency was supplied by purchases made elsewhere by the plaintiff, in part at least by the defendant's express authority; but notwithstanding the failure of the defendant to supply the required quantity in any month and the confessed inadequacy of the plant, the plaintiff continued to give orders until as late as November 4th, 1909, and to accept deliveries as late as December 28th. To meet the deficiency caused by defendant's default, the plaintiff bought one thousand three hundred and forty-seven thirteen hundredths tons elsewhere at a higher price and brings this suit to recover the difference in price paid.

The contract was a valid contract. The express agreement of the buyer to take not less than two thousand tons is a sufficient consideration for the seller's agreement and we are relieved from the difficulty that has arisen in some of the cases where the buyer was thought to be under no obligation to take any quantity at all. The difficulty is to construe the

agreement. The learned trial judge treated it as an absolute contract for three thousand tons, and told the jury that the buyer was under no obligation to pile up orders which it knew could not be filled. We think this was an erroneous view. The contract was not an absolute contract to sell and buy three thousand tons; the buyer was under no obligation to take more than two thousand tons; it had the option to order more up to a total of three thousand tons, but until it had given the necessary orders there was no contract for the excess over two thousand tons; the minds of the parties had not met either as to quantity or quality. Each case varies in its facts, but illustrations somewhat analogous are cited in *Willis. S.,* § 464.

There was, of course, a continuing offer on the part of the defendant to deliver the additional one thousand tons which the plaintiff might accept at any time within the year. There was no express acceptance in so many words, but the correspondence and conduct of the parties would have justified the jury, if the question had been left to them, in finding that the parties had both agreed that the quantity should be three thousand tons. The promise of the defendant on May 10th to ship in excess of the monthly portion of two thousand tons per annum, the silence of the defendant when in the letter of June 28th the plaintiff suggested that two hundred and fifty tons per month was necessary to fulfill the contract requirements, the actual delivery of one hundred and seventy-nine tons in the month of June, the order by the plaintiff in April of one car every four days, and the order in June of ten cars, in September of nine and in November of ten, without complaint on the part of the defendant that the orders were in excess of contract requirements, and the need of the full amount to prevent the Ashburn plant from shutting down, are, as set forth in the plaintiff's brief, very persuasive that there was a tacit agreement for three thousand tons. But the circumstances are not inconsistent with the inference that the parties meant only to make up for the existing defaults in delivery or to order in advance of future deliveries the quantity required to make up two thousand

tons. The error of the judge was in failing to submit to the jury the question of the proper inference to be drawn.

Since the case must be retried, we think it well to deal with another question. In case the jury should find that there was no agreement for the additional one thousand tons, the damages must in any event be limited to the difference between the one thousand five hundred and eighty-nine thirty-seven hundredths tons actually delivered and the two thousand tons contracted for. It is said, however, that the defendant could not be in default until orders were actually given, since the relative quantities of nitric and sulphuric acid in the mixture were for the plaintiff to determine, and as the defendant filled all the orders actually given, it was not in default. Orders were required if the contract was still subsisting. They were not required if the contract had been legally terminated and nothing remained except for the defendant to make compensation for the breach. This turns on the question whether the plaintiff had the right to treat the failure each month of the defendant to make deliveries in the quantities required, as a breach of the contract excusing the plaintiff from giving further orders. The rule formerly established in *Blackburn* v. *Reilly,* 18 *Vroom* 290, has been changed by statute. *Sale of Goods act,* § 45; *Comp. Stat., p.* 4657. The question now is whether the breach in failing to deliver monthly installments is so material as to justify the plaintiff in refusing to proceed further and suing for damages, or whether the breach is severable, giving rise to a claim for compensation but not to a right to treat the whole contract as broken. This is ordinarily a question for the jury, but as in other cases, may be so clear that the court may decide it. As to the difference between the one thousand five hundred and eighty-nine tons and the two thousand tons, it seems clear in this case. The whole deficiency was supplied elsewhere either by express order of the defendant or with its knowledge and without objection. The same question, however, arises in case the jury find a consummated contract for three thousand tons. As late as its letter of August 30th, the plaintiff treated the contract as

subsisting.   There seems to have been but two orders given after that, one September 7th, and one November 4th; and the deliveries did not in any of the four months, September, October, November and December, exceed one hundred and fifty-three tons.   From these orders and the acceptance of these deliveries, inferences may be drawn, either that the plaintiff regarded the contract as still subsisting or that it was merely ordering and accepting the acid to enable the defendant to minimize the damages.   Which inference should be drawn is a jury question.   The learned trial judge dealt with it as a court question.   This also was error, and the rule must be made absolute.