(No. 5561. March 13, 1931.)

A. W. TINGWALL, Appellant, v. FRANK E. WILSON, Respondent.

[296 Pac. 1017.]

A. F. James, for Appellant.

Frank T. Wyman and Frank T. Wyman, Jr., for Respondent.

ADAIR, District Judge.—Appellant brought suit to recover on a small open account for merchandise sold and delivered. Respondent admitted this account, but filed two counterclaims, one for damages resulting from breach of contract, and the other for an amount due on the purchase price of a crop of potatoes. A motion for nonsuit on the first counterclaim was overruled and thereafter the jury brought in a verdict against appellant for the sum of $80.29, and this appeal is from the judgment based thereon.

The many assignments of error, grouped together, raise three principal questions, namely, the insufficiency of the evidence to sustain the verdict, erroneous instructions given, and refusal to give certain requested instructions.

As to each counterclaim, there was a sharp conflict in the testimony. The evidence consisted largely of the statements of the respective litigants, which were diametrically opposed, contradictory and irreconcilable on all important aspects of the case.

Appellant seriously urges that the contract of sale, if made as testified to by respondent, was so indefinite as to price and amount of potatoes to be delivered as to be unenforceable. Under a contract for the sale of sufficient seed to plant fourteen and one-half to fifteen acres of ground, the vendor was obligated to sell and the vendee to buy sufficient to plant at least fourteen and one-half acres. (35 Cyc. 205; *Arthur Delapierre Co. v. Chickasaw Lbr. Co.*, 111 Miss. 607, 71 So. 872; *Ft. Dearborn Coal Co. v. Newaygo Portland Cement Co.*, 230 Mich. 360, 202 N. W. 977; *Dale Oil & Ref. Co. v. City of Tulia*, (Tex. Civ. App.) 25 S. W. (2d)

671; *Western Grocer Co. v. New York Oversea Co.*, 28 Fed. (2d) 518; *H. D. Taylor Co. v. Niagara Bedstead Co.*, 52 Misc. Rep. 356, 102 N. Y. Supp. 173; *E. I. Dupont de Nemours Powder Co. v. United Zinc & Chemical Co.*, 85 N. J. Eq. 416, 89 Atl. 992.)

Where parties contract for the sale and purchase of personal property without fixing a price other than to state a maximum and minimum limit, it is presumed that the contract price is the fair and reasonable market price between these limits. (35 Cyc. 49, 101; *Wilkins v. Jackson*, 100 Okl. 143, 227 Pac. 882; *Dickerman v. Ohashi Importing Co.*, 63 Cal. App. 101, 218 Pac. 458; *Rose v. U. S. Lbr. & Box Co.*, 108 Or. 237, 215 Pac. 171.) According to respondent, the appellant contracted to sell him enough Cobbler seed potatoes to plant from fourteen and one-half to fifteen acres of land at a price not less than $1.50 nor exceeding $2 per hundred. Such contract was not so indefinite as not to be binding on both parties. A contract incomplete on its face is not necessarily void, since absolute certainty as to every detail is not always required. That is certain which may be rendered certain, according to the maxim, *Id certum est, quod certum reddi potest.* It is sufficient that there be a distinct agreement supported by a sufficient consideration to deliver and receive a quantity of goods at a fixed price, or one which can be ascertained by the agreement. There being ample evidence to sustain a verdict for respondent on such counterclaim, the motion for nonsuit was properly overruled.

In order to undertsand the contentions made as to other phases of the controversy, a brief summary of the evidence as to the first counterclaim is required. The respondent testified that he was the owner of a farm near Hammett, on which he contemplated raising fourteen and one-half to fifteen acres of potatoes; that appellant, who was engaged in buying and selling potatoes in connection with his store business, contracted to sell respondent, for planting on said tract, seed potatoes of a specified early variety; that,

relying on such contract, he prepared the ground for seeding; that, when it was too late and impossible for him to procure elsewhere the seed contracted for, the appellant failed and refused to deliver such seed; that to minimize his loss he then purchased the only other seed potatoes available and planted the same; that he thereafter properly cultivated, irrigated, cared for and harvested said crop, but that this seed produced a poor yield of inferior quality, thereby greatly reducing his profits, and he asked as damages the difference between the amount realized and the amount which he would have received as profit had the seed of the variety contracted for been delivered to him. Appellant denied making such a contract, or any contract whatsoever with respondent.

As to this counterclaim, the learned trial judge instructed the jury, in substance, that it was necessary for the respondent to establish by a preponderance of the evidence that appellant agreed to sell and deliver to him Cobbler seed potatoes sufficient to plant fourteen and one-half acres; that appellant knew respondent was purchasing same for the purpose of planting them; that when respondent learned that appellant would not deliver such seed he could not then procure other potatoes of the same kind in proper time for planting, and that if such facts were established, respondent was entitled to recover the net profits he would have made had such seed been furnished, less whatever net profits he could reasonably have realized from the land by other use thereof, and that the term, net profits, as here used, means the excess of the value of the crop at harvest over all expenses of seed, planting, caring for and harvesting the crop. The court also instructed the jury that if the appellant contracted to furnish such seed and failed so to do, and the respondent could not procure same elsewhere in time for planting, it was respondent's duty to use all reasonable diligence to avoid loss of his expected profits, and that whether the means adopted by him to avoid such loss were reasonable under the circumstances, was a question

for the jury; and that if respondent could have procured other potatoes of the same kind and quality in proper time for planting, he could not recover on this cause of action. The court further charged the jury that if they found that appellant had in fact contracted to deliver Cobbler potatoes, but at a later date these parties agreed that Carmen potatoes should be substituted, and it was the intention of the parties that the Carmen potatoes should take the place of the agreement for the sale of Cobbler potatoes, then in such event respondent could not rely upon the original agreement to furnish Cobbler potatoes. To these instructions, appellant excepted.

It is strenuously contended that the opinion of this court in *Tomita v. Johnson,* 49 Ida. 643, 290 Pac. 395, 396, is absolutely decisive of the issues here presented, and that when respondent accepted and planted the Carmen seed in lieu of what he had contracted for, having full knowledge of the actual kind, condition and quality, ''the planting constituted an independent intervening act and the immediate and operating cause of the resulting damage.'' There is no analogy between the facts of the case above mentioned and those in this cause. In the Tomita case, *supra,* the purchaser knew that the rural potatoes received were not of proper quality and had spoiled, yet he planted the same. Here the Cobbler seed potatoes were not furnished at all, and to minimize his loss respondent purchased and planted another variety of seed.

Appellant also contends that the true measure of damages was the difference in price between that stipulated in the contract and the market price of Cobbler seed. This contention is not tenable in view of the fact that such Cobbler seed was not on the market or available at the time in the vicinity of Hammett, according to the findings of the jury on this issue.

The general and correct rule is that where one party contracts to sell seed of a given kind to another and knows that the buyer intends to plant the same and is relying upon

him to furnish such seed, and the seller does not furnish the seed and the buyer cannot secure the same elsewhere in time for planting, and uses another kind of seed to minimize his loss, the measure of damages is the difference between the net value of the crop which would have been raised had the seed contracted for been furnished, and the net value of the crop actually produced. See the following authorities, supporting in principle, such rule: *Nelson v. Intermountain Farmers' Equity*, 36 Ida. 518, 211 Pac. 550; *Newhall Land & Farming Co. v. Hogue-Kellogg Co.*, 56 Cal. App. 90, 204 Pac. 562; *Cline v. Mock*, 150 Mo. App. 431, 131 S. W. 710; *Kefauver v. Price*, 136 Ark. 342, 206 S. W. 664; *Vaughan's Seed Store v. Stringfellow*, 56 Fla. 708, 48 So. 410; *Dunn v. Bushnell*, 63 Neb. 568, 93 Am. St. 474, 88 N. W. 693; 2 Sutherland on Damages, 4th ed., sec. 673, p. 2439.

In his second counterclaim respondent alleged that he sold, at a stipulated price, after harvest, a certain amount of said crop, and that appellant failed to pay him therefor. Appellant claimed that the potatoes were delivered to him on consignment only, and not sold outright; that the potatoes delivered were not of the kind and condition specified, and that they spoiled in transit, the returns therefrom not defraying transportation charges; and that, consequently, he was not indebted to respondent therefor. Various acts of negligence in harvesting, hauling, loading and failure to refrigerate the car were attributed to each party. While error is predicated on the instructions given and refused covering this cause of action, no important question of law is involved. This counterclaim presented simply a question of fact, on which there was a direct conflict in the evidence.

The position of appellant as to his requested instructions, and objections to those given is fallacious, being predicated solely on the theory that appellant's version of this entire transaction was true, and disregarding the other side of the controversy. We have carefully examined all the instructions given and refused, in the light of the evidence adduced, and we find in the record no prejudicial error in any of the

rulings of the lower court in any respect. The contentions and theories of both parties were fairly submitted to the jury without favoritism or partiality.

There being ample evidence to support the verdict, and no error of law appearing, the judgment is affirmed, with costs to respondent.

Lee, C. J., and Givens, Varian and McNaughton, JJ., concur.